IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RICHARD HANSEN,** | ) | **CASE NO. 8:06CV338** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **QWEST COMMUNICATIONS, QWEST BUSINESS RESOURCES, and COMMUNICATIONS WORKERS OF AMERICA,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

This matter is before the Court on the Motion to Dismiss or for Summary Judgment filed by the Communications Workers of America AFL-CIO, and the Motion to Dismiss or, in the alternative, to Stay, filed by Qwest Communications Corp. ("Qwest") and its subsidiary, Qwest Business Resources, Inc. (hereafter "BRI"). The Plaintiff, Richard Hansen, is an employee of BRI, and he opposes the motions. The issues have been fully briefed, and evidence has been considered. (Filing Nos. 22, 23, 37; 25, 26, 36; and 34, 35). For the reasons provided, the motions will be denied in their entirety.

The Defendants contend that Hansen has failed to exhaust the contractual remedies available to him under the applicable collective bargaining agreement ("CBA") as a precondition to this enforcement action and, therefore, that the Court lacks jurisdiction. Exhaustion of remedies contained in a CBA is a condition that applies when an employee sues an employer for violating a substantive provision of the collective bargaining agreement, and the union or employer defends on the ground that the employee should have pursued arbitration before bringing a court action. Hansen contends that he has

exhausted his remedies under the CBA and that he has a final and binding arbitration decision that deserves to be enforced.

**FACTUAL BACKGROUND**

In 1989, Richard Hansen began his employment with BRI. He was at all relevant times a member of the Communication Workers of America union (hereafter "CWA"). On January 13, 2003, Hansen was discharged. On January 20, 2003, he filed a grievance challenging his discharge. Hansen stated that he filed the grievance pursuant to Article 7.4 of the applicable collective bargaining agreement, entitled "Agreement Between Qwest Business Resources, Inc., and Communication Workers of America Effective dated August 16, 1998, Extended Through August 16, 2003" (hereafter referred to as the "BRI Agreement"). Full back pay is a remedy available under the BRI Agreement for covered employees who prevail on grievances based on a claim of wrongful discharge. (Filing No. 1 Complaint, Ex. 1 at Art. 8.5).

On or about August 2003, the CWA and BRI renegotiated their CBA and decided to merge their agreement into what has been referred to as the Qwest Agreement, or the Big Book, that covers other Qwest employees. (Filing No. 26, Declaration of Hugh Doherty, Qwest Agreement excerpts are attached as Ex. 1). The Qwest Agreement became effective August 17, 2003, and it provides another form of alternative dispute resolution that is referred to in the Qwest Agreement as "advisory ADR." Advisory ADR is different from traditional labor arbitration in many ways, including that no briefs are filed; the parties are limited to two witnesses per side; the examination of those witnesses is limited to 20 minutes; and the neutral's opinion is only advisory unless all parties consent to be bound by it. (Filing No. 22, Boyle Dec. ¶9). If the parties agree to be bound by the

opinion, then it becomes the final and binding decision. (Filing No. 26, Doherty Dec. Ex. 1). A crucial difference between traditional arbitration and the advisory ADR process outlined in Article 16 of the Qwest Agreement is that full back pay awards are available under traditional arbitration but back pay awards available to a successful grievant under the advisory ADR process are capped at 18 months.

Hansen's January 2003 grievance was still pending in 2004. In October 2004, Hansen successfully employed an internal CWA appeal procedure to persuade the union to press his grievance at the third step.[1] According to LeRoy Christensen, who at the time was the administrative assistant to CWA District 7[2] Vice-President John Thompson, Christensen and Qwest's Labor Relations Manager, Hugh Doherty, agreed to employ advisory ADR for Hansen's grievance. Doherty stated that Article 16 of the Qwest Agreement would govern the advisory ADR, and Christensen agreed. From Christensen's perspective, by the time Hansen's third step was under consideration in October 2004, "BRI had agreed to be covered by the Qwest grievance and arbitration procedure on future cases and that procedure included ADR." (Filing No. 22, Christensen Dec. ¶19). Christensen's and Doherty's agreement was confirmed in a November 11, 2004 e-mail. (*Id.* at Ex. 2).

Christensen communicated the union's agreement to use advisory ADR to CWA staff representative Mary Kay Pence, and later, when Pence left her staff representative

---

[1] The steps are outlined in the collective bargaining agreements. For example, in the BRI contract, initial review of the grievance occurs at step 1, review of a denial of the grievance at step 2, and pursuing arbitration at step 3 with various union and employer representatives.

[2] District 7 included CWA members in Nebraska.

position, she communicated the union's agreement to use advisory ADR on Hansen's grievance to her successor, Jay T. Boyle. (Filing No. 22, Christensen Dec. ¶ 22; Boyle Dec. ¶5). Boyle informed Hansen, and Hansen agreed to the advisory ADR format. It is unclear whether Christensen communicated to Pence that Article 16's back pay cap would apply, but Boyle has testified that he was not informed of that proviso before the advisory ADR concluded and, therefore, he did not tell Hansen that the 18-month cap would be imposed as part of the ADR process.

On September 28, 2005, the discharge issues were presented to neutral Mario Bognanno, who, on September 29, 2005, issued an advisory opinion that BRI had no just cause to discharge Hansen and that Hansen was entitled to reinstatement. Bognanno's decision does not mention a remedy other than reinstatement, and specifically does not address back pay. (Filing No. 22, Boyle Dec. Ex. 4).

On October 12 or 13, 2005, CWA's Boyle notified Hansen of his success in the advisory ADR proceeding, and that Qwest was prepared to accept the decision. Hansen states that during that conversation, Hansen also agreed to accept the decision, and he told Boyle that he was entitled to full back pay of 33 months, citing Article 8.5 of the BRI Agreement. At the time, Boyle was also under the impression that Hansen's back pay award would be governed by the BRI Agreement. (Ex. 3 to the Complaint).

On October 31, 2006, BRI reinstated Hansen's employment. On November 2, 2005, Boyle forwarded to Hansen a copy of an e-mail message from BRI that stated BRI's position that Hansen was not entitled to full back pay, and that BRI (Qwest) had agreed with the CWA that Article 16's 18-month back pay cap applied. Hansen objected, maintaining that he was entitled to 33 months of back pay. Boyle, who initially believed

4

Hansen was entitled to full back pay, investigated and learned from Christensen that Christensen and Qwest had expressly agreed to follow all the provisions of Qwest Agreement Article 16, which included the 18-month back-pay cap. This was the first that Boyle knew of the employer's and union's agreement to impose the 18-month cap.

Boyle and Hansen continued discussing the obstacles to enforcing the neutral's decision in the manner Hansen desired. About three months after Hansen returned to work at BRI, Boyle prepared a letter to Hansen dated January 11, 2006, communicating the union's position that Hansen either had to 1) accept the 18-months of back pay being offered by Qwest; or 2) submit the entire matter to traditional arbitration. Boyle did not hear from Hansen until Hansen's attorney corresponded with Boyle in March 2006. Thereafter, on May 26, 2006, the CWA notified BRI in writing that Hansen intended to pursue full arbitration based on the back pay that remained in dispute. Hansen then commenced this action.

According to Hansen, CWA has refused to pursue enforcement of the ADR decision because it made a determination that Hansen's back pay was appropriately limited by the 18-month cap, and Hansen rejected that provision. Hansen maintains that since November 5, 2005, he has demanded full back pay pursuant to the BRI Agreement. Based on the CWA's decision not to pursue enforcement of the decision and the remedy of full back pay, Hansen has asserted a breach of the duty of fair representation against the CWA.

## STANDARD OF REVIEW

The CWA has brought a motion to dismiss, or in the alternative, for summary judgment. Qwest has brought a motion to dismiss, or in the alternative, to stay the action.

With regard to the jurisdictional issue, whether Plaintiff's action is premature based on the alleged absence of a final decision, I note that a district court is entitled to consider matters outside the pleadings and is entitled to resolve fact issues in determining its jurisdiction. *McClain v. American Economy Ins. Co.,* 424 F.3d 728, 734 (8th Cir. 2005). With regard to matters that are not jurisdictional, evidence has been offered and considered by the Court. Thus, those issues have been considered as matters raised in motions for summary judgment. *BJC Health System v. Columbia Cas. Co.,* 348 F.3d 685, 687 (8th Cir. 2003) citing *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting Wright & Miller, Federal Practice and Procedure § 1366)("'matters outside the pleading' . . . [are] any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.").

**Summary Judgment Standard**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Finance, Inc.,* 445 F.3d 1106, 1109-110 (8th Cir. 2006*) (quoting Bockelman v. MCI Worldcom, Inc.,* 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ANALYSIS

Hansen has alleged what has become known as a hybrid claim under Article 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  The United States Court of Appeals for the Eighth Circuit recently explained what a plaintiff is required to prove to prevail on such a claim.

> Section 301 contemplates suits by and against individual employees as well as between unions and employers," and "encompass [es] those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Hines,* 424 U.S. at 562, 96 S.Ct. 1048. As the exclusive bargaining agent in the negotiation and administration of a collective bargaining agreement, the union assumes the responsibility and duty of fair representation for all of its members. *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).

*Jones v. United Parcel Service, Inc.*,  461 F.3d 982, 994 (8th Cir. 2006).

CWA seeks dismissal of claim for breach of the duty of fair representation as alleged in Count II of the Plaintiff's Complaint because, it argues, Hansen has not exhausted his contractual grievance remedies, and, consequently, there  is no final and

7

binding arbitration decision to enforce. Both CWA and Qwest take the position that the proceedings before the neutral, Mario Bognanno, were advisory only, and that Hansen, in rejecting the offer of 18 months of back pay, rejected the result of the advisory ADR. CWA contends that it properly referred the matter to full arbitration, which is now pending. Thus, CWA argues that it is impossible for the union to have breached its duty of fair representation for failure to enforce the arbitration decision because there is no final arbitration decision. Qwest concurs and argues that without the showing of a breach of Hansen's duty to fair representation, Hansen's claim against it for breach of the collective bargaining agreement, at best, is premature and should be dismissed.

Hansen contends that, because neither party rejected it, Bognanno's advisory opinion became the final and binding arbitration decision. Hansen maintains that the union's duty of fair representation included to press for enforcement of the neutral's decision which would have entitled him, under the BRI contract, to full back pay. Hansen rejects only the employer's position on the remedies available to him, not the neutral's decision.

**Nature of ADR Decision**

It has long been recognized by the United States Supreme Court that the expiration of a collective bargaining agreement is not necessarily fatal to a grievance so long as the grievance "arose out" of the contract. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 249-55 (1977); *see also Litton Financial Printing Div. V. N.L.R.B.,* 501 U.S. 190, 203-08 (1991). Hansen was discharged and he filed his grievance in January 2003, while the BRI contract was still in effect. I find that the

undisputed evidence is that the grievance "arose out" of the BRI Agreement, and Hansen retained the right under the BRI Agreement to pursue full arbitration, absent a waiver of that right.

If Hansen waived the right to pursue full arbitration, then that waiver would have been made in conjunction with the side agreement to use advisory ADR format. There seems to be no dispute that by November 2004, the CWA and BRI agreed to employ advisory ADR in an attempt to resolve Hansen's grievance. Hansen acknowledges that he agreed and understood that the parties would engage in advisory alternative dispute resolution. The undisputed evidence demonstrates that initially Christensen and Doherty, and ultimately Boyle and Hansen too, understood that Hansen's grievance would be put through the advisory ADR procedure on the condition that 1) Qwest or Hansen was free to reject the advisory opinion of the neutral, which would result in the parties' use of traditional arbitration; or, alternatively, 2) Qwest and Hansen would accept the neutral's opinion and it would become binding. (Filing No. 22, Boyle Dec. ¶ 8).

The undisputed evidence is also that Hansen did not reject the neutral's advisory opinion. Qwest did not reject the neutral's opinion. Hansen was reinstated. The dispute between the parties arose after Hansen's employment was reinstated, because only then did it become apparent that Hansen did not know that CWA and Qwest had agreed to limit his back pay damages to 18 months. Hansen contends that because neither he nor Qwest rejected the neutral's advisory opinion, that advisory opinion transformed by agreement of the parties into the final and binding arbitration decision. I agree. By assenting to participate in the advisory ADR format, expressly subject to the condition that the neutral's opinion could be rejected by either party, I conclude that Hansen waived his right to full

arbitration under the BRI contract subject to the retention of his right to reject the neutral's opinion and thereafter engage in full arbitration. There is no evidence that Qwest, Hansen, or CWA desired to reject Bognanno's decision; only that there was a subsequent dispute regarding the amount of and responsibility for back pay damages.

Hansen's waiver of his right to full arbitration became effective when the parties assented to the decision, and the decision – at that time – became final and binding. Therefore, I conclude that Hansen has exhausted his contractual obligation to pursue arbitration. The Court has jurisdiction over this matter.

**Breach of Duty of Fair Representation**

Hansen is not alleging that the union failed to represent him fairly in the advisory ADR process, but rather, Hansen alleges that the union breached its duty to represent him fairly by failing to press for enforcement of Bognanno's decision. It appears that the union had no incentive to press for enforcement of the decision to obtain full back pay because the union knew that its representative expressly agreed with Doherty that the employer's exposure for monetary damages would be limited to 18 months if the parties did not reject the neutral's advisory opinion.

The Court must determine whether LeRoy Christensen, the CWA representative, had the power to bind Hansen, without Hansen's knowledge or consent, to the terms of his agreement with Hugh Doherty, then Qwest Manager or Senior Manager in Labor Relations. If Christensen did not have the power or used his power arbitrarily, then the Court must consider whether their failure to inform Hansen that the side agreement included a provision capping back pay constitutes a breach of the union's duty of fair representation. Like the right to pursue full arbitration, I conclude that Hansen's right to full back pay as a

remedy is among those "'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge" as described in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562 (1976).

> A union breaches its duty of fair representation only when its conduct toward a member is "arbitrary, discriminatory, or in bad faith," or so unreasonable as to be "irrational."

*Jones,* 461 F.3d at 994 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) and *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 78 (1991)).

It is helpful in this case to consider the genesis of the union's duty to the employee. The Eighth Circuit Court has explained that because a union is "signatory to the agreement on behalf of all the employees," it serves "in the capacity of a fiduciary to the employees." *Richardson v. Communications Workers of America,* 443 F.2d 974, 980 (8th Cir. 1971). Thus, "the rights of the individual employees are the 'major focus' of the bargaining contract with the company," and "[b]reach of the agreement by the bargaining agent, which simultaneously conflicts with its role as a fiduciary to the employee, creates a claim for breach of trust of its statutory duty to give adequate representation." *Id.*

The Eighth Circuit Court has stated that the duty may be violated when a union in bad faith or without dishonest purpose interferes with a right conferred on an employee by his employer, fails to take a grievance to arbitration, or *waives the provisions of a collective bargaining agreement intended to benefit an employee.*" *Emmanuel v. Omaha Carpenters Dist. Council*, 535 F.2d 420, 423 (8th Cir. 1976). In a subsequent case, the Eighth Circuit Court stated that a union's conduct may be arbitrary "even though it acted in good faith and without any hostile motive." *Morgan v. St. Joseph Terminal R. Co.*, 815 F.2d 1232, 1234

11

(8th Cir. 1987) (quoting *Smegal v. Gateway Foods of Minneapolis, Inc.*, 763 F.2d 354, 359 (8th Cir. 1985). However, "[m]ere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation." *Buford v. Runyon,* 160 F.3d 1199, 1202 (8th Cir. 1998).

It was, and remains, Qwest's position that Hansen is entitled to only 18 months of back pay, but that his rejection of the 18-month cap requires that the entire matter be submitted to formal arbitration. There is nothing in the record[3] that indicates that Doherty was not justified in relying on his communications with Christensen. There is no evidence that Hansen was informed by his union representatives that the union had agreed with Qwest to an 18-month back pay cap as part of the ADR process. The only evidence of the extent of Hansen's knowledge is Hansen's testimony that he agreed to the advisory ADR; but not to a cap. Further, Hansen testified that, it was not until after his employment was reinstated in November 2005, that he had knowledge of the union's assent to an 18-month back-pay cap. Indeed, at the time Christensen and Doherty agreed to engage in the ADR process and impose an 18-month cap, Hansen had already been unemployed for 22 months. By the time the neutral's opinion was accepted, it had been more than 33 months. Hansen returned to work on October 31, 2005. There is no evidence that Hansen expressly waived whatever claim he may have to full back pay under the BRI Agreement. Hansen has disavowed the union's letter to Qwest, dated May 2006, requesting full arbitration and consistently has sought full back pay as a remedy available to him under the BRI contract.

---

[3] I am mindful that the case is in its early stages.

Based on the allegations in the Complaint and the evidence submitted to date, I conclude that the Plaintiff has alleged a claim upon which relief may be granted against the union for breach of its duty of fair representation. Whether CWA's failure to inform Hansen of the 18-month cap before the advisory ADR process commenced constitutes a breach of its duty of fair representation, and if it does, whether Hansen is entitled to damages as a result, remain to be decided. Those issues and which party, if any, is responsible for the difference between full back pay and 18 months of back pay, will be determined upon proper motion or at trial in accordance with the law.

The United States Supreme Court has held that if an employer had wrongfully discharged an employee and the union had breached its duty, then the employee would be "entitled to an appropriate remedy against the employer as well as the [u]nion." *Hines,* 424 U.S. at 572.

> "The governing principle . . . is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." . . . [I]t follows that [the union's] liability for damages may be apportioned to the extent that it is responsible for the whole of such damage.

Richardson, 443 F.2d at 981 -982 (quoting *Vaca*, 386 U.S. at 197).

For all the reasons provided in this memorandum,

IT IS ORDERED:

1.  The CWA's Motion to Dismiss or in the Alternative for Summary Judgment (Filing No. 21) is denied in its entirety; and

2.  Qwest's Motion to Dismiss or in the Alternative to Stay (Filing No. 24) is denied in its entirety.

DATED this 21st day of November, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge